IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rita Vo, | C/A No. 0:09-2509-RMG-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, Commissioner of Social Security, | |
| Defendant. | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Rita Vo ("Vo"), brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In December 2002, Vo applied for SSI and DIB. Vo's applications were denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on June 23, 2005 at which Vo appeared and testified. Vo was not represented by counsel. After hearing testimony from a vocational expert, the ALJ issued a decision dated August 17, 2005 finding that Vo was not disabled. (Tr. 30-41.) During the pendency of this claim, Vo filed subsequent applications for SSI and DIB in September 2005.

Vo filed a request for Appeals Council review, which was denied on May 5, 2006. Vo filed a Complaint on May 27, 2006, seeking federal judicial review of the Commissioner's decision. On

September 5, 2007, the Honorable Patrick Michael Duffy, United States District Judge, remanded the case to the Commissioner for further administrative proceedings. Specifically, Judge Duffy remanded the case for the ALJ to explain his reasons for rejecting Dr. Robert E. Boyd's opinion and to address Vo's claims of fibromyalgia, to discuss the weight given to Dr. Louis J. Dolinar's opinion, and to conduct a function-by-function analysis of the claimant's abilities. Vo v. Astrue, C/A No. 9:06-1624-PMD-GCK (D.S.C. Sept. 5, 2007). The Appeals Council remanded the case to the ALJ on January 10, 2008. In 2005, while Vo's case was pending before the district court, she filed a second application for benefits. On remand the ALJ consolidated Vo's 2002 and 2005 applications and held a supplemental hearing on October 20, 2008 at which Vo appeared and was represented by Paul T. McChesney, Esquire. Additional medical evidence was presented and considered and the ALJ issued a decision dated March 3, 2009, again finding that Vo was not disabled. (Tr. 296-313.)

Vo was born in 1961 and was forty-seven years old at the time of the ALJ's second decision. (Tr. 384.) She earned a General Equivalency Diploma in 2000 and has past relevant work experience as a nursing aid, housekeeper, and spinner in a textile mill. (Tr. 364, 369.) Vo alleges disability since June 12, 2002 due to back and shoulder disorders, fibromyalgia, depression, and anxiety. (Tr. 363-64.)

On remand, the ALJ made the following findings and conclusions:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2007.

2. The claimant has not engaged in substantial gainful activity since January 12, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: thoracic and lumbar strain, right rotator cuff tendonitis, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

\* \* \*

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except that she should not climb ladders, ropes or scaffolds or work overhead with her right upper extremity. She is restricted to simple routine tasks in a low stress environment [] which I define as requiring few decisions and with only occasional interaction with the public.

\* \* \*

6. The claimant is capable of performing past relevant work as a housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from June 12, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 299-312.)

The Appeals Council upheld the decision of the ALJ on September 11, 2009, making the March 3, 2009 decision of the ALJ the final action of the Commissioner. (Tr. 283-84.) Vo then filed this action.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

PJG

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig, 76 F.3d at 589. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775 (4th Cir. 1973).

## ISSUES

Vo raises the following issues for this judicial review:

I. The ALJ did not perform the analysis of the treating and evaluation physician opinions required by 20 C.F.R. § 404.1527(d)(1)-(6), SSR 96-2p and SSR 96-5p.

II. The ALJ did not explain his findings regarding Vo's residual functional capacity, as required by Social Security Ruling 96-8p.[]

(Pl.'s Br., ECF No. 12.)

# DISCUSSION

## A. Treating Physician

Vo first argues that the ALJ erred in considering the opinion of her treating physician, Dr. John Hibbitts, which was presented for the first time on remand. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." Id.; cf. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*) ("Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not *require* that the testimony be given controlling weight.") (emphasis added). If controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ noted that Dr. Hibbitts treated Vo from June 11, 2003 through December 13, 2004. In a statement dated January 30, 2006, Dr. Hibbitts stated, in pertinent part, the following:

> From [December 2004] until [Vo] has a successful course of therapy or surgery, Ms. Vo would have difficulty with any work that required anything more than occasional reaching with the right arm, or any task that required her to hold her right elbow off a table on anything more than an occasional basis. Overhead lifting with that arm would be difficult, and any lifting with the right arm would be limited to some extent.

(Tr. 251.) The ALJ summarized Dr. Hibbitts's opinion and upon considering it found that his

> conclusions regarding limited use of the claimant's right upper extremity with no overhead work with her right arm are supported by the evidence and entitled to significant weight. My conclusion that the claimant is restricted to lifting and carrying 20 pounds occasionally and 10 pounds frequently with no overhead work with the right upper extremity is consistent with Dr. Hibbitt's [sic] conclusions. I do not find evidence of deterioration in the claimant's orthopedic condition since Dr. Hibbitts treated her in December 2004. Instead, the evidence shows that the claimant's symptoms improved with injections and medications.

(Tr. 309.) Vo argues that the ALJ's conclusion that the restrictions he found are consistent with Dr. Hibbitts's conclusions is not supported by the evidence. Specifically, Vo contends that the ALJ stated that he gave Dr. Hibbitts's opinion significant weight; however, the ALJ's restrictions do not account for Dr. Hibbitts's indication that Vo could perform only occasional reaching in any direction with her right arm and that she would have difficulty performing any task that required her to "hold her right elbow off a table on anything more than an occasional basis." (Tr. 251.) Vo also suggests that Dr. Hibbitts's statement that any lifting with the right arm would be limited to some extent is more restrictive than the ALJ's finding that Vo could lift and carry twenty pounds occasionally and ten pounds frequently.

The court agrees with the Commissioner that Vo misconstrues the ALJ's decision with regard to Dr. Hibbitts's opinion. As stated above, the ALJ did not state that he was giving Dr. Hibbitts's

entire opinion significant weight; rather, he specifies that Dr. Hibbitts's "conclusions regarding limited use of the claimant's right upper extremity with no overhead work with her right arm" is entitled to significant weight. The ALJ did not state or otherwise indicate that he adopted the portion of Dr. Hibbitts's opinion regarding a restriction from work requiring Plaintiff to hold the right elbow off a table more than occasionally. Further, the ALJ specifically noted that there was an absence of deterioration in Vo's orthopedic condition and that Vo's symptoms had improved with treatment.

Additionally, Vo has failed to demonstrate that the ALJ's finding that she could lift and carry twenty pounds occasionally and ten pounds frequently was inconsistent with Dr. Hibbitts's conclusions and unsupported by substantial evidence. Vo even acknowledges in her brief that Dr. Hibbitts's statement that any lifting with the right arm would be limited to some extent could be encompassed by the ALJ's light lifting restriction; Vo merely suggests that a more limited lifting restriction would be a reasonable interpretation as well.

The court also observes that the ALJ's lifting restriction is supported by objective medical reports of improvement in her right shoulder as noted by the ALJ. (See, e.g., Tr. 158 (reporting that Vo had experienced improvement in her right shoulder with treatment, including treatment with ibuprofen); Tr. 160 (containing Dr. Kevin W. Kopera's opinion that Vo's right shoulder symptoms were improving)). It is also supported by the opinions of Dr. Dale Van Slooten and Dr. Joan Crennan, state agency physicians. Both of these doctors determined that Vo retained the physical residual functional capacity to lift twenty pounds occasionally and ten pounds frequently and only limited Vo from performing work that required climbing ladders, ropes, or scaffolds, or reaching overhead. (Tr. 470-76; 496-502.) Accordingly, upon review of the medical evidence and the ALJ's decision, Vo cannot demonstrate that the ALJ's decision with regard to Dr. Hibbitts's opinion is

unsupported by substantial evidence or that the ALJ failed to comply with the court's previous instructions on remand.[1]

**B.      Consultative Examiners**

Vo next argues that the ALJ erred in considering the opinions of three consultative examiners, Dr. Louis J. Dolinar, Dr. James N. Ruffing, and Dr. Ron O. Thompson. Regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(d); 416.927(d). Generally, more weight is given to the opinions of an examining source than a non-examining one. Id. Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. Id.

**1.      Dr. Dolinar**

As stated above, as part of the remand the district court instructed the ALJ to state the amount of weight given to the opinion of Dr. Dolinar, a consultative psychiatrist. Specifically, the court instructed the ALJ "to indicate whether he accepts Dr. Dolinar's opinion in full, and if not, explain the reasons for rejecting all or portions of that opinion." Vo v. Astrue, C/A No. 9:06-1624-PMD-GCK, at 23 (D.S.C. Sept. 5, 2007).

___

[1] To the extent that Vo argues that the ALJ erred in not obtaining vocational testimony to support his finding that Dr. Hibbitts's restrictions were consistent with the restrictions the ALJ found Vo had, this argument is without merit. There is no support for Vo's argument that vocational expert testimony is appropriate for that purpose. The Commissioner uses vocational experts as sources of occupational evidence rather than medical evidence. See SSR 00-4p; see also 20 C.F.R. §§ 404.1566(e), 416.966(e) (stating that a vocational expert may be used to determine whether claimant's work skills can be transferable and specific occupations in which they can be used); SSR 96-9p, SSR 85-15, SSR 83-12 (stating that a vocational expert may be used to analyze the impact of the claimant's RFC on the claimant's ability to work and to testify as to effects of nonexertional impairments on the range of work a person can do or as to the extent that a claimant's occupational base is eroded by nonexertional limitations).



Dr. Dolinar examined Vo on November 13, 2003. Dr. Dolinar's report indicates that Vo reported back, shoulder, and hip pain, and that Dr. Hibbitts and Dr. Kopera had advised her that she should never work again. (Tr. 197.) She also reported that she prepared meals with difficulty and suffered from depression, suicidal ideation, and a peculiar thought process, but she denied auditory hallucinations. (Tr. 197-98.) Dr. Dolinar's examination revealed moderate to severe depression and anxiety as well as passive suicidal ideation, but found no overt delusions, hallucinations, thought disorder, or gross disorientation. Dr. Dolinar estimated average intelligence. (Tr. 198.) He diagnosed a single episode of severe major depression and a generalized anxiety disorder. (Id.) He determined that Vo's current Global Assessment of Function ("GAF")[2] and her highest GAF for the past year was 45. (Tr. 199.) Dr. Dolinar found that Vo's social function appeared severely constricted, "her ability to concentrate and persist to task completion appeared mildly-to-moderately impaired by informal mental status examination," her work-related function and reasoning appeared colored by pessimism, and her ability to make occupational, personal, and social adjustments appeared severely impaired. (Id.)

In considering this opinion, the ALJ observed that "the mental status examination report was brief with mentioned limitations based on the claimant's allegations including moderate to severe depression and anxiety with suicidal thoughts." (Tr. 310.) The ALJ noted that the Dr. Dolinar

---

[2] The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, fourth edition ("DSM-IV"), contains a numeric scale (0 through 100) used to rate the severity of psychological symptoms and/or social, occupational, or school functioning. According to the DSM-IV, a GAF score between 41 and 50 may reflect "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Id. at 34. A GAF score may reflect the severity of symptoms or impairment in functioning at the time of the evaluation. Id. at 32-33.

reported that Vo complained severely and repeatedly. In giving Dr. Dolinar's conclusions little weight, the ALJ stated that

> Dr. Delinar's [sic] assessment of severe mental limitations of function is not supported by his own mental status examination which primarily shows that the claimant is pessimistic and complains a lot. Also, his conclusions are not supported by the claimant's longitudinal history which shows that she does indeed maintain contact with a neighbor and family and that [she] attends church on occasion. Additionally, other evidence shows that she shops, does some light housework and light cooking, and is entrusted with the care of her grandchildren. The overall evidence persuasively contradicts Dr. Delinar's [sic] opinion of severely constricted social functioning and severe work-related limitation of function.

(Tr. 311.) Vo concedes that the ALJ did consider Dr. Dolinar's opinion on remand; however, she argues that the ALJ's analysis is not supported by substantial evidence. Vo contends that the examination did not primarily show that Vo is pessimistic and complains a lot; rather, it showed that Dr. Dolinar diagnosed Vo with severe major depression and generalized anxiety disorder, with a GAF of 45. However, while Vo may dispute the characterization of Dr. Dolinar's report, a review of the two-and-a-half page report reveals that Dr. Dolinar referenced Vo's complaints or pessimism at least five times. Dr. Dolinar's statements included the following: (1) "She complains bitterly that her husband does not understand depression nor do a number of people close to her" (Tr. 197); (2) "[Vo's spouse] will work out of [town] on weekends and she complains to him that he never invites her to go with him" (Tr. 198); (3) "She complained bitterly that her brother expressed disappointment in her . . . . Even her daughter will implore her to stop the same repetitious complaints" (Tr. 198); (4) "It might also be said that Ms. Vo did complain severely and repeatedly" (id.); (5) "Work-related functions and reasoning appears colored by pessimism" (Tr. 199). Furthermore, plaintiff's reliance on the diagnosis and GAF are insufficient to render the ALJ's decision unsupported by substantial evidence. See, e.g., Parker v. Astrue, 664 F. Supp. 2d 544, 557

(D.S.C. 2009) (stating that "Plaintiff's GAF score is only a snapshot in time, and not indicative of Plaintiff's long term level of functioning"); DSM-IV, supra n.2. While Vo may point to activities within Dr. Dolinar's opinion that may support his assessment, such as Vo's statements that she ruminated about suicide and cannot push a broom, the court concludes that the ALJ's findings are comfortably within the bounds of substantial evidence. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

Additionally, the court notes that in the prior remand order, Judge Duffy observed that the ALJ's finding that Vo's depression results in moderate restrictions appears consistent with Dr. Dolinar's opinion that Vo was moderately to severely depressed. See Vo v. Astrue, C/A No. 9:06-1624-PMD-GCK, at 22 (D.S.C. Sept. 5, 2007). Judge Duffy further noted that the ALJ's finding appeared consistent with other evidence in the record concerning Vo's depression, citing evidence indicating that Vo experienced improvements in her depression with Paxil and that she was referred to outpatient mental health treatment but only attended one counseling session. Id. at 22 & n.4.

Based on the foregoing, Vo has failed to demonstrate that the ALJ's evaluation of this opinion is unsupported by substantial evidence or affected by an error of law.

### 2. Dr. Ruffing

On September 23, 2008, Dr. Ruffing, a consultative clinical psychologist, examined Vo. (See Tr. 517-25.) Dr. Ruffing prepared a detailed report which stated that Vo reported that she resided alone, performed household cleaning on a limited basis, cared for her own personal needs, prepared simple meals, drove an automobile, attended church services occasionally, and shopped independently when the store is not crowded. (Tr. 520.) Further, Dr. Ruffing's examination

Page 12 of 20

PJG

revealed that Vo appeared to demonstrate a depressed and anxious affect and presented various complaints, such as low energy levels, disturbed sleep, and suicidal ideation without a specific plan or intent. Dr. Ruffing indicated that Vo had inconsistent ability to attend and focus. However, he also observed that Vo was oriented and adequately groomed. Dr. Ruffing stated that Vo demonstrated adequate eye contact; normal, articulate, spontaneous, and responsive speech; intact, relevant, coherent, and goal-directed thought processes; and grossly intact memory. (Tr. 521.) Dr. Ruffing administered a Personality Assessment Inventory ("PAI"), which he stated is designed to assess factors that could distort the results of testing. For example, the test suggested that Vo did not respond to evaluation in a completely forthright manner and may have exaggerated her problems. (Tr. 522.) Dr. Ruffing diagnosed Vo with major depressive disorder and panic disorder. (Tr. 525.) Dr. Ruffing also assessed Vo's ability to do certain work activities, some of which indicated moderate functional limitations. (Tr. 517-18.)

Vo argues that if Dr. Ruffing's assessment were accepted, it would require a finding of disability. For example, Vo points out that Dr. Ruffing indicated that Vo would be able to deal with ordinary work stresses about fifty percent of the time and maintain attention and concentration about forty percent of the time. However, Vo argues that although the ALJ acknowledged an opinion from Dr. Ruffing, the ALJ simply failed to evaluate this opinion or indicate the weight he accorded the opinion. In response, the Commissioner argues that the ALJ expressly discussed Dr. Ruffing's examination findings and relied on Dr. Ruffing's observation that Vo had a tendency to exaggerate.

The ALJ indeed provided a detailed discussion of Dr. Ruffing's examination (see Tr. 303-04) and in evaluating other opinions it is clear that the ALJ accepted and relied on Dr. Ruffing's observation that Vo had a tendency to exaggerate (see Tr. 306, 310). Further, a review of the ALJ's



opinion reveals that he relied on the portion of Dr. Ruffing's report indicating that Vo reported to Dr. Ruffing in 2008 that she lives alone, does limited housekeeping, drives, attends church once per month, cooks light meals, shops by herself when the stores are not crowded, and does laundry. (Tr. 306 ) (citing Dr. Ruffing's report).

Additionally, the ALJ found that Dr. Ruffing's "medical assessment overall appear[ed] to indicate no greater than moderate restrictions in making occupational, performance, or social functioning." (Tr. 310.) While Vo argues that the ALJ failed to indicate the weight that he gave Dr. Ruffing's report, the court disagrees. Dr. Ruffing's report states that the PAI revealed that Vo "may not have answered in a completely forthright manner," that "her responses may lead one to form a somewhat inaccurate impression of her based upon the style of responses," and that her responses indicate an exaggeration of symptoms with a possibility for malingering. (Tr. 522.) Dr. Ruffing also stated that "the test results potentially involve considerable distortion and are unlikely to be an accurate reflection of Rita's objective clinical status. The following interpretation of the PAI results is provided only as a indication of her[ ]self description." (Id.) Dr. Ruffing's report then proceeded to discuss the remainder of the test results, which are a reflection of Vo's self-reported symptoms. It is clear that the ALJ accepted Dr. Ruffing's assessment that Vo had a tendency to exaggerate her symptoms, implicitly rejecting the remainder of the report and its conclusions.

Credibility determinations are within the providence of the ALJ. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). By accepting Dr. Ruffing's determination that Vo had a tendency to exaggerate her symptoms and based on the

PJG

foregoing, the court cannot say that the ALJ's determination with regard to Dr. Ruffing's opinion was controlled by an error of law.

3.  **Dr. Thompson**

On December 5, 2005, Dr. Thompson, a consultative psychologist, examined Vo. (See Tr. 431-33.) During the examination, Vo reported that she has occasional crying spells that had diminished and denied experiencing any suicidal ideation in several months due to antidepressant medication. (Tr. 431.) However, Vo reported that she "can't even take care of [her]self." (Id.)

Dr. Thompson's examination revealed that Vo was appropriately groomed and calm; demonstrated a slow, stiff gait, and occasional shifting for comfort; a moderately depressed mood and an affect congruent with that mood; "a bit slow" cognitive spontaneity; and mild to moderate concentration and attention deficits; but she also demonstrated a brightening of her affect during examination; coherent and normal speech flow; a goal-directed and relevant thought process; near normal cognitive ability; and intact insight and judgment. (Tr. 431-32.)

Vo reported that she performed light housework and shopped with accompaniment. However, Vo stated that she has ceased her hobbies of painting and ceramics because she has no interest in them and cannot concentrate. She also indicated that she no longer attended church. (Tr. 432.) Dr. Thompson diagnosed Vo with "[a]ffective disorder with major depressive features, moderate, secondary to general medical condition;" moderate anxiety with attention and concentration deficits also secondary to general medical condition; and a somatoform disorder associated with both psychological and general medical condition factors. (Tr. 433.) Dr. Thompson concluded that Vo had mild to moderate attention and concentration deficits, mildly to moderately impaired cognitive functioning, moderately impaired emotional functioning, moderately to

*PJG*

significantly impaired social functioning, and possible difficulty maintaining pace and persistence in simple repetitive work-related tasks for two hours. (Tr. 433.)

The ALJ considered Dr. Thompson's opinion and stated that his conclusions restricting Vo to simple routine tasks consistent with unskilled work in a low stress environment are consistent with Dr. Thompson's conclusions of mild and moderate cognitive, emotional, and concentration deficits. (Tr. 310.) However, the ALJ gave little weight to Dr. Thompson's conclusion that Vo was moderately to significantly impaired in social functioning. (Id.) In reaching this conclusion, the ALJ observed that Dr. Thompson's conclusions were based on a one-time evaluation of Vo and that he did not have the benefit of reviewing her entire record or considering her longitudinal history. Further, the ALJ found that Dr. Thompson's restrictions were based on Vo's subjective allegations. In considering these restrictions, the ALJ pointed to numerous inconsistencies in the information Vo relayed to Dr. Thompson, which contradicted other information in the record. For example, Vo stated that she just wanted to stay home and not visit family or friends, that she only went out because her daughter forced her to, and that she no longer attended church. However, the ALJ observed that other statements in the record indicated that Vo has at least one friend who visits regularly, her cousin visits daily, and she attends church about once per month.[3] The ALJ also noted that Vo reported the ability to shop alone if the store is not crowded and that she would like to go on out-of-town work trips with her husband but he did not invite her. (Id.)

Based on the record, Vo's credibility, and her subjective allegations, the ALJ found that

> while she may be limited socially to some extent and should not be required to perform work that involves more than occasional interaction with the public, she is

---

[3] Many of these statements appear to be derived from Dr. Ruffing's examination, which was conducted in 2008. (See Tr. 520.)



> consistently described as pleasant and able to communicate without difficulty. The evidence does not document emergency or other specific treatment for any panic attacks or significant anxiety or medically detected signs of agoraphobia. Based on review of the entire record, I find that the claimant is fully capable of performing work that requires no more than occasional public interaction and ongoing interaction with co-workers and supervisors.
>
> Dr. Thompson's statement regarding moderate to significantly impaired social function is in contrast to the claimant's reports of daily activities and with records and findings by other treatment sources regarding her ability to communicate and get along with others.

(Id.) Finally, the ALJ noted Dr. Ruffing's description of Vo, which included a tendency to exaggerate her symptoms.

Vo appears to argue that the ALJ's rejection of a portion of Dr. Thompson's opinion was not supported by substantial evidence. In support of the assertion, Vo first disputes the alleged inconsistencies in her reported activities and argues that they match statements she made in other evaluations. As noted above, it appears that many of the inconsistencies in Vo's activities were derived from reports Vo made in her most recent consultative examination. While Vo may be able to point to other evidence which supports her statements, this finding by the ALJ is comfortably within the bounds of the substantial evidence standard. Blalock, 483 F.2d at 775 (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); Craig, 76 F.3d at 589 (stating that on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

Vo also argues that the ALJ's statement that Dr. Thompson's opinion was based on Vo's subjective allegations is unsupported and should not undermine the opinion as mental health evaluations necessarily rely on patient information as well as the doctor's medical expertise.

Page 17 of 20

PJG

However, this statement is not completely unsupported. In the preceding sentence to this statement, the ALJ observed that Dr. Thompson did not have the benefit of reviewing Vo's entire record or consider Vo's longitudinal history. The ALJ also provides examples from Vo's medical records which are inconsistent with Dr. Thompson's social functioning determination. Accordingly, the court finds this argument without merit. See Meyer v. Astrue, C/A No. 3:08-3828-JFA-JRM, 2010 WL 1257626 (D.S.C. Mar. 25, 2010) ("The degree of weight afforded [to consultative] opinions necessarily depends on the degree to which they provide supporting explanations for their opinions.") (internal quotation marks and citations omitted).

Finally, Vo asserts that the ALJ erred in relying on Dr. Ruffing's examination because, as argued above, Vo contends his assessment supports a finding of disability. For the same reasons discussed above, this argument is without merit. Therefore, based on a review of the record and the ALJ's decision, Vo has failed to demonstrate that the ALJ's conclusion was not supported by substantial evidence or reached through application of an incorrect legal standard.

**C.      Social Security Ruling 96-8p**

Vo also argues that in performing Vo's residual functional capacity ("RFC") assessment, the ALJ failed to perform a function-by-function assessment of her physical and mental abilities in his decision pursuant to SSR 96-8p. Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8.

Vo argues that the ALJ's assessment was conclusory and failed to sufficiently reference the supporting evidence or discuss Vo's abilities on a function-by-function basis. It appears that in support of this argument, Vo primarily relies upon her above arguments, which assert that the ALJ erred in evaluating several medical opinions. To the extent that this argument is based on her previous arguments, as discussed above, Vo has failed to demonstrate that the ALJ's evaluations of these opinions were unsupported by substantial evidence or reached through application of an incorrect legal standard. Further, a review of the ALJ's decision reveals that the ALJ extensively discussed each of the medical opinions presented in the record and the non-medical evidence. These discussions addressed Vo's physical and mental functioning. Further, Vo has failed to demonstrate or provide any support for her argument that the ALJ failed to assess Vo's abilities on a function-by-function basis. Therefore, the court finds this argument to be without merit.

## RECOMMENDATION

For the foregoing reasons, the court finds that Vo has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

November 30, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).