| | | |
|---|---|---|
| Rita Vo, | ) | Civil Action No. 0:09-cv-2509-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security Administration, et. al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiff (sometimes "Vo") filed this action seeking judicial review of a final decision of Defendant Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a Magistrate Judge for pretrial handling. As detailed herein, after a *de novo* review of the Record and Plaintiff's objections, this Court adopts the Report and Recommendation of the Magistrate Judge and affirms the decision to deny benefits.

## Background

The Magistrate Judge issued a Report and Recommendation recommending that the decision of the Commissioner denying benefits be affirmed. (Dkt. No. 18). Plaintiff objected. (Dkt. No. 20).

## Standard of Review

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). The court is charged with making a *de novo* determination of those

portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b) (1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's

findings of fact are not binding, however, if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.1987).

## Law/Analysis

This Court has reviewed the Record *de novo*, including Plaintiff's objections. While Plaintiff, in large part, relies on prior briefing and arguments therein presented to and addressed by the Magistrate Judge, this Court has explained below why affirmance is warranted.

### I. Treating Doctor

Plaintiff contends that the ALJ erred in the consideration of the opinion of her treating physician, Dr. John Hibbitts, which was presented for the first time on remand. Generally, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). "If [the Commissioner] finds that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, [the Commissioner] will give it controlling weight." *Id.* But if controlling weight is not accorded, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In

3

the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).

Dr. Hibbitts concluded that "Ms. Vo would have difficulty with any work that required anything more than occasional reaching with the right arm, or any task that required her to hold her right elbow off a table on anything more than an occasional basis. Overhead lifting with that arm would be difficult, and any lifting with the right arm would be limited to some extent." (Tr. 251.) The ALJ summarized Dr. Hibbitts's opinion and upon considering it found that his conclusions regarding limited use of the claimant's right upper extremity with no overhead work with her right arm are supported by the evidence and entitled to significant weight. The ALJ determined that his conclusion was consistent with those of Dr. Hibbitt. Further, the ALJ did not find evidence of deterioration in the claimant's orthopedic condition since Dr. Hibbitts treated her in December 2004. Instead, the evidence shows that the claimant's symptoms improved with injections and medications. (Tr. 309.)

Despite this, Vo contends that while the ALJ stated that he gave Dr. Hibbitts's opinion significant weight, the ALJ's restrictions do not account for Dr. Hibbitts's indication that Plaintiff could perform only occasional reaching in any direction with her right arm and that she would have difficulty performing any task that required her to "hold her right elbow off a table on anything more than an occasional basis." (Tr. 251.) Plaintiff argues that Dr. Hibbitts's statement that any lifting with the right arm would be limited to some extent is more restrictive than the ALJ's finding that Vo could lift and carry twenty pounds occasionally and ten pounds frequently.

4

Plaintiff misapprehends the ALJ's findings, the ALJ did not state that he was giving Dr. Hibbitts's entire opinion significant weight; rather, he specifies that Dr. Hibbitts's "conclusions regarding limited use of the claimant's right upper extremity with no overhead work with her right arm" is entitled to significant weight. The ALJ did not state or otherwise indicate that he adopted the portion of Dr. Hibbitts's opinion regarding a restriction from work requiring Plaintiff to hold the right elbow off a table more than occasionally. Further, the ALJ specifically noted that there was an absence of deterioration in Vo's orthopedic condition and that Vo's symptoms had improved with treatment. Plaintiff has also failed to demonstrate that the ALJ's finding that she could lift and carry twenty pounds occasionally and ten pounds frequently was inconsistent with Dr. Hibbitts's conclusions and unsupported by substantial evidence. Vo even acknowledges in her brief that Dr. Hibbitts's statement that any lifting with the right arm would be limited to some extent could be encompassed by the ALJ's light lifting restriction.

Thus, upon a *de novo* review of the medical evidence and the ALJ's decision, Vo cannot demonstrate that the ALJ's decision with regard to Dr. Hibbitts's opinion is unsupported by substantial evidence or that the ALJ failed to comply with the court's previous instructions on remand.

## II. Consulting Examiners

Plaintiff contends that the ALJ erred in his consideration of the opinions of three consultative examiners, Dr. Louis J. Dolinar, Dr. James N. Ruffing, and Dr. Ron O. Thompson. Under the applicable law, the Commissioner will evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(d); 416.927(d). Generally, more weight is

given to the opinions of an examining source than a non-examining one. *Id.* Additionally, more weight is generally given to opinions of treating sources than non-treating sources, such as consultative examiners. *Id.*

The Record reveals the ALJ properly considered each consulting doctor and their findings.

A. Dr. Dolinar

In the Order remanding this matter, the district court instructed the ALJ to state the amount of weight given to the opinion of Dr. Dolinar, a consultative psychiatrist. Specifically, the court instructed the ALJ "to indicate whether he accepts Dr. Dolinar's opinion in full, and if not, explain the reasons for rejecting all or portions of that opinion." *Vo v. Astrue*, C/A No. 9:06-1624-PMD- GCK, at 23 (D.S.C. Sept. 5, 2007).

In following the court's directive and in considering Dr. Dolinar's opinion, the ALJ observed that "the mental status examination report was brief with mentioned limitations based on the claimant's allegations including moderate to severe depression and anxiety with suicidal thoughts." (Tr. 310.) The ALJ noted that the Dr. Dolinar reported that Vo complained severely and repeatedly. In giving Dr. Dolinar's conclusions little weight, the ALJ stated that Dr. Delinar's [sic] assessment of severe mental limitations of function is not supported by his own mental status examination which primarily shows that the claimant is pessimistic and complains a lot. Also, his conclusions are not supported by the claimant's longitudinal history which shows that she does indeed maintain contact with a neighbor and family and that [she] attends church on occasion. Additionally, other evidence shows that she shops, does some light housework and light cooking, and is entrusted with the care of her grandchildren. The overall

evidence persuasively contradicts Dr. Delinar's [sic] opinion of severely constricted social functioning and severe work-related limitation of function. (Tr. 311.) Further, Plaintiff concedes that the ALJ did consider Dr. Dolinar's opinion on remand. But Plaintiff contends that the ALJ's analysis is not supported by substantial evidence. This Court disagrees.

Based on the foregoing and the Reocord, Vo has failed to demonstrate that the ALJ's evaluation of this opinion is unsupported by substantial evidence or affected by an error of law.

B.   Dr. Ruffing

On September 23, 2008, Dr. Ruffing, a consultative clinical psychologist, examined Vo. (See Tr. 517-25.) Dr. Ruffing prepared a detailed report which stated that Vo reported that she resided alone, performed household cleaning on a limited basis, cared for her own personal needs, prepared simple meals, drove an automobile, attended church services occasionally, and shopped independently when the store is not crowded. (Tr. 520.) Dr. Ruffing's examination revealed that Vo appeared to demonstrate a depressed and anxious affect and presented various complaints, such as low energy levels, disturbed sleep, and suicidal ideation without a specific plan or intent. Dr. Ruffing indicated that Vo had inconsistent ability to attend and focus. However, he also observed that Vo was oriented and adequately groomed. Dr. Ruffing stated that Vo demonstrated adequate eye contact; normal, articulate, spontaneous, and responsive speech; intact, relevant, coherent, and goal-directed thought processes; and grossly intact memory. (Tr. 521.) Dr. Ruffing's testing revealed that Vo did not respond to evaluation in a completely forthright manner and may have exaggerated her problems. (Tr. 522.) Dr. Ruffing

diagnosed Vo with major depressive disorder and panic disorder. (Tr. 525.) Dr. Ruffing also assessed Vo's ability to do certain work activities, some of which indicated moderate functional limitations. (Tr. 517-18.)

Vo argues that if Dr. Ruffing's assessment were accepted, it would require a finding of disability. Plaintiff contends that under his view she would be able to deal with ordinary work stresses about fifty percent of the time and maintain attention and concentration about forty percent of the time. Despite Vo's argument to the contrary, the ALJ provided a detailed discussion of Dr. Ruffing's examination (*see* Tr. 303-04) and in evaluating other opinions it is clear that the ALJ accepted and relied on Dr. Ruffing's observation that Vo had a tendency to exaggerate (*see* Tr. 306, 310). Further, a review of the ALJ's opinion reveals that he relied on the portion of Dr. Ruffing's report indicating that Vo reported to Dr. Ruffing in 2008 that she lives alone, does limited housekeeping, drives, attends church once per month, cooks light meals, shops by herself when the stores are not crowded, and does laundry. (Tr. 306 ) (citing Dr. Ruffing's report). The ALJ also found that Dr. Ruffing's "medical assessment overall appear[ed] to indicate no greater than moderate restrictions in making occupational, performance, or social functioning." (Tr. 310.) While Vo argues that the ALJ failed to indicate the weight that he gave Dr. Ruffing's report, the court disagrees. Dr. Ruffing's report states that his testing revealed that Vo "may not have answered in a completely forthright manner," that "her responses may lead one to form a somewhat inaccurate impression of her based upon the style of responses," and that her responses indicate an exaggeration of symptoms with a possibility for malingering. (Tr. 522.) Dr. Ruffing also stated that "the test results potentially involve considerable distortion and are unlikely to be an accurate

8

reflection of Rita's objective clinical status. Thus, from the Record, it is clear that the ALJ accepted Dr. Ruffing's assessment that Vo had a tendency to exaggerate her symptoms, implicitly rejecting the remainder of the report and its conclusions.

Credibility determinations are within the providence of the ALJ. *See Craig*, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Thus, this Court cannot overturn the decision of the ALJ.

C. Dr. Thompson

Dr. Thompson, a consultative psychologist, examined Vo. (*See* Tr. 431-33.) During the examination, Vo reported that she has occasional crying spells that had diminished and denied experiencing any suicidal ideation in several months due to antidepressant medication. (Tr. 431.) However, Vo reported that she "can't even take care of [her]self." (Id.)

Dr. Thompson's examination revealed that Vo was appropriately groomed and calm; demonstrated a slow, stiff gait, and occasional shifting for comfort; a moderately depressed mood and an affect congruent with that mood; "a bit slow" cognitive spontaneity; and mild to moderate concentration and attention deficits; but she also demonstrated a brightening of her affect during examination; coherent and normal speech flow; a goal-directed and relevant thought process; near normal cognitive ability; and intact insight and judgment. (Tr. 431-32.)

Vo reported that she performed light housework and shopped with accompaniment. However, Vo stated that she has ceased her hobbies of painting and ceramics because she has no interest in them and cannot concentrate. She also indicated

9

that she no longer attended church. (Tr. 432.) Dr. Thompson diagnosed Vo with "[a]ffective disorder with major depressive features, moderate, secondary to general medical condition;" moderate anxiety with attention and concentration deficits also secondary to general medical condition; and a somatoform disorder associated with both psychological and general medical condition factors. (Tr. 433.) Dr. Thompson concluded that Vo had mild to moderate attention and concentration deficits, mildly to moderately impaired cognitive functioning, moderately impaired emotional functioning, moderately to significantly impaired social functioning, and possible difficulty maintaining pace and persistence in simple repetitive work-related tasks for two hours. (Tr. 433.)

The ALJ considered Dr. Thompson's opinion and stated that his conclusions restricting Vo to simple routine tasks consistent with unskilled work in a low stress environment are consistent with Dr. Thompson's conclusions of mild and moderate cognitive, emotional, and concentration deficits. (Tr. 310.) However, the ALJ gave little weight to Dr. Thompson's conclusion that Vo was moderately to significantly impaired in social functioning. (*Id.*) In reaching this conclusion, the ALJ observed that Dr. Thompson's conclusions were based on a one-time evaluation of Vo and that he did not have the benefit of reviewing her entire record or considering her longitudinal history. The ALJ found that Dr. Thompson's restrictions were based on Vo's subjective allegations. In considering these restrictions, the ALJ pointed to numerous inconsistencies in the information Vo relayed to Dr. Thompson, which contradicted other information in the record. While the Court will not recite them all, for one, Vo stated that she just wanted to stay home and not visit family or friends, that she only went out because her daughter forced her to, and that she no longer attended church. However, the

10

ALJ observed that other statements in the record indicated that Vo has at least one friend who visits regularly, her cousin visits daily, and she attends church about once per month. The ALJ also noted that Vo reported the ability to shop alone if the store is not crowded and that she would like to go on out-of-town work trips with her husband but he did not invite her. (*Id.*)

Based on the record, Vo's credibility, and her subjective allegations, the ALJ found that while she may be limited socially to some extent and should not be required to perform work that involves more than occasional interaction with the public, she is consistently described as pleasant and able to communicate without difficulty. The evidence does not document emergency or other specific treatment for any panic attacks or significant anxiety or medically detected signs of agoraphobia. Based on review of the entire record, I find that the claimant is fully capable of performing work that requires no more than occasional public interaction and ongoing interaction with co-workers and supervisors.

Vo appears to argue that the ALJ's rejection of a portion of Dr. Thompson's opinion was not supported by substantial evidence. Plaintiff contends she was not inconsistent in her states. But while Vo may be able to point to other evidence which supports her statements, this finding by the ALJ is comfortably within the bounds of the substantial evidence standard. *Blalock*, 483 F.2d at 775 (stating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence); *Craig*, 76 F.3d at 589 (stating that on review the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]").

Having reviewed the Record *de novo*, this Court concludes that, despite her arguments otherwise, Vo has failed to demonstrate that the ALJ's conclusion was not supported by substantial evidence or reached through application of an incorrect legal standard.

### III. Social Security Ruling 96-8p

Vo also argues that in performing Vo's residual functional capacity ("RFC") assessment, the ALJ failed to perform a function-by-function assessment of her physical and mental abilities in his decision pursuant to SSR 96-8p. Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8.

But a review of the ALJ's decision reveals that the ALJ extensively discussed each of the medical opinions presented in the record and the non-medical evidence. These discussions addressed Vo's physical and mental functioning. Further, Vo has failed to demonstrate or provide any support for her argument that the ALJ failed to assess Vo's abilities on a function-by- function basis. Therefore, the court finds this argument to be without merit.

### CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through

application of an incorrect legal standard. *See Craig*, 76 F.3d at 589; *see also* 42 U.S.C. § 405(g); *Coffman*, 829 F.2d at 517. Thus, the decision denying benefits is **affirmed**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

December 28, 2010
Charleston, South Carolina